WICKER, Judge.
These combined cases address servitude rights of passage across immovable property and damages suffered by the unknowing owners of the servient estate as a result of their vendor’s failure to disclose the existence of the servitude. They also address damages suffered by a vendee as a result of an undisclosed pre-existing “wrap around” mortgage granted by vendors. The trial judge granted the plaintiffs the prayed-for servitude (but to a lesser extent) and awarded damages to the owners of the servient estate. We affirm.
The plaintiffs/appellants, Dilia Montoya, wife of/and Christopher Palgrave, complain that:
(1) the judgment awarded only a servitude of passage rather than access to the entire servient estate;
(2) alternatively, the judgment failed to award them a reduction in the purchase price of their land representing diminished value due to lack of access to water;
*98 (3) the judgment failed to award damages due to the existence of the vendor’s lien;
(4) the refusal to grant a new trial prevented the presentation of specific evidence on reduction in value because of the limited servitude of passage;
(5) alternatively, the refusal to grant a new trial prevented the presentation of evidence on damages resulting from the existence of the vendor’s lien;
(6) also alternatively, the judgment failed to award damages incurred by virtue of the existence of the vendor’s lien; and
(7) the judgment failed to award costs and attorney’s fees.
Two defendants, James E. Tallieu and A & T Partnership, a Louisiana Partnership in Commendam, complain that the damages awarded the co-defendant, Jerry Gros, are excessive.[1]
The Palgraves purchased three lots, 10, 11, and 12, Square 1, in Murphy Subdivision from A & T and its general partners, Tallieu and Murphy Alio. Appendix “A” shows the relationship of these lots to Bayou Barataría and the property later purchased from A & T by Gros. The Pal-graves wanted to have access to Bayou Barataría for boat launching in connection with a contemplated shrimping and crabbing business. They believed (and the testimony shows that this belief was justified) that Lot 1 Square 2, fronting on Bayou Barataría, would be reserved to property owners in the subdivision for this purpose.
The Act of Sale, passed on December 10, 1980, contained the language “In additional consideration for the Act of Sale, Vendor [A & T] does hereby grant permission to Vendee herein, their Heirs, Successors and Assigns, the right to use Lot 1 Square 2 as a means of ingress and egress to Bayou Barataría.” The parties stipulated at trial that this was never indexed as a servitude.
The Act of Sale, which was later recorded in COB 995, folio 580, Parish of Jefferson, also recited:
By reference to the Mortgage and Conveyance Certificates of the Clerk of Court and Ex-Officio Recorder of Mortgages and Register of Conveyances in and for the Parish of Jefferson, State of Louisiana, annexed hereto and made part hereof in the name of Vendor it does not appear that the herein described property has been heretofore alienated or is presently encumbered.
Notwithstanding this language, the certificate referred to, dated December 24, 1980, (fourteen days later) clearly indicates the existence of a vendor’s lien in favor of Charles Steiner, et al, A & T’s vendor. (This is referred to in testimony as a “wrap-around” mortgage.) Tallieu and Alio represented A & T at the sale.
The Palgraves evidently used Lot 1 Square 2 without incident for nearly a year following acquisition of their lots. A & T sold Lot 1 Square 2, however, to Gros on November 24, 1981, for $15,000.00 cash, without advising him of the servitude. Gros threatened to prosecute the Palgraves for trespassing.
Shortly after, on December 21, 1981, the Palgraves purchased from A & T an additional lot, Lot 9 Square 1. That Act of Sale revealed the existence of the vendor’s lien in favor of Stein, and A & T entered into a hold harmless agreement in favor of the Palgraves concerning that vendor’s lien.
The first suit filed, 265-946, 24th Judicial District Court for the Parish of Jefferson, was by the Palgraves against Tallieu, A & T, and Gros, alleging a possessory action against these defendants. (This suit is represented by appeal # 86-CA-712.) It was filed on April 21, 1982, and was supplemented by the Palgraves to ask for damages resulting from the existence of the vendor’s lien.
A & T filed a suit for executory process, # 268-921, 24th Judicial District Court for the Parish of Jefferson, relating to Lot 9 Square 1. (This suit is represented by Appeal # 86-CA-22.) An additional suit by A *99 & T against the Palgraves, # 272-030, 24th Judicial District Court for the Parish of Jefferson, was filed, asking for executory-process with regard to the lots 10, 11 and 12. (This suit is represented by appeal # 86-CA-23). All three suits were consolidated; but #268-921 and 272-030, A & T’s petitions for executory process, were dismissed on joint motion without prejudice.
Gros third-partied Tallieu and A & T, alleging that, if the court found a servitude existed, these third party defendants would be liable in damages to him. Tallieu third-partied Alio, alleging his responsibility for the state of affairs. Alio, in turn, third-partied Tallieu and A & T.
The trial judge awarded the Palgraves a servitude through the property of Gros. He awarded Gros damages in the amount of $10,000.00 from Tallieu and “A & T Properties, Inc.” (The judgment was amended on May 23, 1985, to correct the name of the defendant from “A & T Properties, Inc.” to “A & T Properties, a Louisiana Partnership in Commendam.” The judgment was silent with regard to the Palgraves’ claim of damages resulting from the undisclosed vendor’s lien and the diminished value of their property. It also is silent as to any third party claims of Tallieu against Alio.
The Palgraves moved for a new trial to address their damage claims. In the meantime, however, Gros appealed and Tallieu and A & T answered. (86-CA-21.) This Court dismissed Gros’ appeal for prematurity on February 24, 1986, since no judgment had yet been rendered on the Pal-graves’ motion for a new trial, 483 So.2d 678 (La.App. 5th Cir., 1986). Similarly, the answer to that appeal by Tallieu and A & T was premature and without effect.
Since that time, the vendor’s lien against the Palgraves’ property has been released, on March 20, 1986.
The trial judge denied the motion for a new trial on June 27, 1986; and the Pal-graves appealed. On January 15, 1987, all prior appeal numbers were consolidated with this one.[2] No other parties appealed or answered this appeal, although Tallieu, A & T, and Gros did file briefs.[3] The only issues before the Court are raised by the appeal of the Palgraves.
THE EXISTENCE OF A PREDIAL SERVITUDE
The language alleged to constitute a predial servitude is found in the Act of Sale from A & T to the Palgraves: “Vendor does hereby grant permission to Vendee herein, their Heirs, Successors and Assigns, the right to use Lot 1 Square 2 as a means of ingress and egress to Bayou Bar-ataría.” The issue we must determine is whether this language creates a predial or a personal servitude, and whether it is binding only on the vendor or also on the vendor’s successors in title.
To constitute a predial servitude, there must be “a charge on a servient estate for the benefit of a dominant estate.” L.S.A.-C.C. art. 646; Hailey v. Panno, 472 So.2d 97 (La.App. 5th Cir.1985). The test is whether or not the charge exists for the benefit of the estate rather than for the benefit of the person. Hailey v. Panno, supra.
Similar language was construed in Harris v. Darinn Corp., 431 So.2d 441 (La.App. 1st Cir.1983) and was found to be a servitude of passage:
It is expressly agreed and understood that a right of ingress and egress is *100 extended by vendor, its successors or assigns, to the said Everett L. Talbot, his heirs, successors, or assigns, over and across the property occupied by the Ramada Inn and owned by Greenacres Realty, Inc....
We hold that the trial judge did not err in finding that a servitude of passage was created in the Act of Sale between A & T and the Palgraves.
The servitude in question is a conventional and not a legal servitude, since neither estate is “enclosed”, as required by L.S.A.C.C. art. 689. “When a servitude is established in a sale, exchange or partition, it has received the mutual assent of the parties. Their agreement establishes a conventional servitude.” Brian v. Bowlus, 399 So.2d 545, 548 (La.1980), on rehearing 399 So.2d 547 (La.1981). “The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the following rules.” L.S.A.-C.C. art. 697. Accord: Ogden v. Bankston, 398 So.2d 1037 (La.1981); Hailey v. Panno, supra.
The Civil Code provides that, “[ujnless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate.” L.S.A.-C.C. art. 705.
The appealed-from judgment does not specify the extent of the servitude granted, and the parties have not asked us for a ruling on this issue. If the extent or manner of exercise of the servitude is not spelled out, “the intention of the parties is to be inferred from the purpose” of the servitude. Hailey v. Panno, supra, at p. 100. The unrebutted testimony of the Pal-graves was that they intended to have a shrimping business after they retired and that they needed to bring shrimp boats to and from Bayou Barataría through Lot 1 Square 2. However, since both title and judgment are silent on the issue of the servitude’s extent, L.S.A.-C.C. art. 730 applies as well as C.C. art. 705. “Doubt as to the ... extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.” L.S.A.-C.C. art. 730; Dautreuil v. Degeyter, 436 So.2d 614 (La.App. 3rd Cir.1983).
The conflict between Civil Code articles 705 and 730 must be resolved in a manner equitable to the Palgraves and to Gros. We hold that the Palgraves are entitled to a servitude sufficient to allow them to bring their boats in and out of Bayou Bara-taría but that their servitude must be exercised with the least possible inconvenience and disruption to Gros.
RECORDATION OF THE SERVITUDE AND DAMAGES TO GROS
A & T and Tallieu have argued in brief that the act establishing the servitude was recorded and that Gros was charged with constructive knowledge of the servitude. They also have argued that the damages awarded to Gros were excessive. Gros has argued that no servitude ever came into being. However, since we have determined that no appeals by A & T, Tallieu, or Gros are before this court, we find it unnecessary to address these issues.
QUANTI MINORIS DAMAGES DUE TO THE “WRAPAROUND” MORTGAGE
The judgment of the trial court omits any reference to two claims of the Palgraves:
1. that the property they purchased was lacking an essential quality and that damages are due them for that lack; and
2. that the existence of the unrevealed “wraparound” mortgage damaged them by its very existence. We find that, by his silence on these issues, the trial judge rejected these demands. Reed v. Verwoerdt, 490 So.2d 421 (La.App. 5th Cir.1986.)
The servitude of passage, as defined by this opinion, is sufficient for the use contemplated by the Palgraves. We cannot see, and they have not proved, any damage to them by the trial court's ruling.
The “wraparound” mortgage complained of has been cancelled, and the Palgraves have not shown any damage to them as a result of its existence.
*101 The trial judge’s denial of recovery for these items was not error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
AFFIRMED.
APPENDIX A
[[Image here]]

. Tallieu and A & T answered the original appeal of Mr. and Mrs. Gros (86-CA-23), which was dismissed for prematurity. They neither appealed subsequently nor answered the appeal in 86-CA-712. We find that, consequently, this issue is not preserved for our review.

. 86-CA-22 and 86-CA-23 represent the two suits for executory process which were jointly dismissed without prejudice. 86-CA-21 represents the premature appeal of Gros which was dismissed. These numbers were consolidated for the sake of completeness. However, since they represent suits which were dismissed, they present no issue for review by this Court.

. Gros also filed an Objection to Proceeding with Appeal, attaching Tallieu's Voluntary Petition in Bankruptcy (U.S. Bankruptcy Court for the Eastern District of Louisiana proceedings #86-04089). Gros’ request for a delay in this appeal was denied. Only the debtor has the right to an automatic stay in a Chapter 11 proceeding [GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711 (C.A. 5th Cir.1985); Wedgeworth v. Fibreboard Corp., 706 F.2d 541 (C.A. 5th Cir.1983), and Tallieu has not requested a stay of this court.